■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY FORTE, Appellant. [636 NYS2d 47] —Judgment, Supreme Court, Bronx County (Vincent Vitale, J.), rendered December 15, 1993, convicting defendant, after a trial by jury, of murder in the second degree and sentencing him to a term of 25 years to life, to be served concurrently with a sentence of 4 1/2 to 9 years under Bronx County Indictment No. 9007/90,

unanimously reversed, on the law, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

At defendant's trial for murder in the second degree for the death of Ravi Basdeo, the prosecution showed that, on the evening of October 6, 1990, one Mark Perry had indicated to two friends of Basdeo that he was looking for Basdeo, who had "set him up", and that he was going to "get" him. There is no indication that appellant was present at either of these conversations.

At about 2:45 A.M., Perry, the defendant and a third man, Alfred Simmons, walked up to 1155 Gerard Avenue and asked for Basdeo, using his nickname, "Indio." Basdeo emerged from the building and all four men walked into the rear yard. Ten minutes later all four left, headed toward Cromwell Street. Shortly after, several people saw two men, one of whom fit Basdeo's description, enter a building at 1160 Cromwell Avenue and walk up the stairs on the left side of the lobby. Thirty to sixty seconds later, two more men approached the same building and asked a young woman sitting on the stoop whether two men had just entered. When she responded that they had, the second pair went inside and also walked up the stairs on the left side of the lobby. According to Pedro DeLeon, a resident of the building, he and several other residents, whom he could not identify, became suspicious and followed the men up the stairs, stopping at each floor to check the corridors. At the sixth floor, DeLeon looked up the stairwell to the roof landing and did not see anyone, and returned to the lobby.

Fifteen to thirty minutes later, three of the men, not including Basdeo, left the building. Mr. DeLeon went up to the roof, where he found the bandanna and cap Basdeo had been wearing. He did not disturb them and did not call the police.

At 6:45 A.M. the next morning, Basdeo's body was found outside 1160 Cromwell Avenue. He had died as a result of injuries suffered when he fell or was pushed from a "great height". He had abrasions on his knees which could have been sustained prior to his fall, and several of the buttons from his shirt were found on the roof.

The prosecution also entered into evidence statements made by defendant after his arrest in which he stated that he was hanging out with Simmons when Perry approached them and

told them he was going to get his money (which defendant understood to refer to payments from people who sold cocaine for Perry) and asked them to come with him. They all walked over to McClellan Street, where Perry met up with Basdeo, whom defendant did not know. Perry and Basdeo walked down the street, followed, about three quarters of a block back, by defendant and Simmons. After Perry turned a corner, defendant lost sight of him, and he therefore asked a girl if anyone had gone into a building and she pointed inside. He and his friend walked upstairs and, when they got to the top floor, Perry came in from the roof and told them to "chill" and went back out to the roof. A minute later, Perry came in again and they left. Defendant denied that he worked for Perry or that he knew him well.

This evidence was insufficient as a matter of law to establish defendant's guilt of murder in the second degree. The standard of review for legal sufficiency is whether, when viewed in a light most favorable to the prosecution, the evidence could have led a rational trier of fact to find that the elements of the crime were established beyond a reasonable doubt (*People v Wong*, 81 NY2d 600, 608). Here, while the evidence was sufficient to show that Basdeo was the victim of a homicide, as to defendant, at best it showed no more than that he was present at, or near, the scene. This is not enough to establish his guilt beyond a reasonable doubt (*see, People v Hoc*, 146 AD2d 545, *lv dismissed* 74 NY2d 741). Thus, defendant's conviction for murder in the second degree should be vacated and the indictment dismissed. Defendant's conviction under Indictment No. 9007/90, under which he is serving a sentence of $4^1/_2$ to 9 years, is not affected by this disposition. Concur—Ellerin, J. P., Rubin, Kupferman, Williams and Mazzarelli, JJ.